IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JOHN N. LEEVERS                          *

     Plaintiff,                     *

vs.                                       *
                                           CASE NO. 4:04-CV-34(CDL)

LEONARD M. BILBERRY,                     *

     Defendant.                     *

                                     *

O R D E R

Bilberry Golf, Inc. ("Bilberry Golf") has filed a Motion to Intervene in the above captioned action and a motion for declaratory and injunctive relief, seeking to enjoin an arbitrator from exercising jurisdiction over it in an arbitration involving the existing parties to this lawsuit.[1]  The Court held an evidentiary hearing on Bilberry Golf's motions.  At the conclusion of that hearing, the Court orally granted Bilberry Golf's Motion to Intervene and preliminarily enjoined the Arbitration as to Bilberry Golf until a final ruling could be made on its request for permanent declaratory and injunctive relief.  For the following reasons, the Court grants Bilberry Golf's motion for permanent declaratory and injunctive relief.

---

[1] That arbitration is designated as *Leevers v. Bilberry,* Am. Arbitration Assoc., No. 30 180 Y 00349 06 (April 25, 2006) (Allgood, Arb.) and is referred to in this Order as the "Arbitration."

BACKGROUND

To understand the issues presented in Bilberry Golf's pending motions, it is helpful to review briefly the nature of the pending litigation. This lawsuit arises from a partnership dispute between Plaintiff Leevers, as a limited partner, and Defendant Bilberry, as the general partner. Leevers and Bilberry ("Partners") executed two separate partnership agreements, each of which contained a clause requiring them to submit all disputes relating to the partnership to arbitration. The motions currently before the Court relate to one of these partnerships, Foxchase Limited Liability Limited Partnership ("Foxchase Partnership").

The Partners formed the Foxchase Partnership to develop a piece of property located in Harris County, Georgia ("Property"). The Property initially belonged to James F. Day. In 1994, Day contracted with Bilberry Golf for partial construction of a golf course. Bilberry Golf completed its work in December 1995, shortly before Plaintiff and Defendant jointly purchased the Property. When the Partners executed their partnership agreement sometime in 1997,[2] they transferred their personal interests in the Property to Foxchase Partnership.

---

[2] According to an excerpt from Defendant's deposition testimony, the parties executed the Foxchase partnership agreement in July of 1997. Plaintiff contends, however, that the date of execution was actually January 1, 1997. For purposes of deciding the present motion, the Court simply finds that the parties executed the Foxchase agreement sometime in 1997.

2

Bilberry Golf is a Texas construction company in the business of constructing golf courses and has been authorized to do business in Georgia since 1994. After purchasing the Property, the Partners requested that Bilberry Golf rebuild the golf course. Although he is no longer affiliated with Bilberry Golf, Defendant owned fifty percent of the company at that time. The remaining fifty percent belonged to Defendant's brother, Lee Bilberry ("Lee"), who currently serves as the President and sole owner of Bilberry Golf.[3]

In addition to providing construction services, Bilberry Golf assumed management of the Property from 1996 to 2000. According to Lee, the Foxchase Partnership remained unprofitable throughout Bilberry Golf's term of management, requiring Bilberry Golf to provide operating loans in excess of $2 million. Consequently, Bilberry Golf is the single largest creditor of the Foxchase Partnership. According to Plaintiff, his status as limited partner left him unaware of either the managerial involvement or the debt claim of Bilberry Golf.

Plaintiff ultimately became dissatisfied with Defendant's performance as general partner and sought to dissolve their partnerships. He demanded that Defendant submit this dispute to arbitration, but filed the present lawsuit when Defendant refused. This Court then ordered the Partners to submit to arbitration

---

[3]Lee Bilberry testified that he purchased his brother's interest in 2000, agreeing to pay Defendant an annual salary from Bilberry Golf's accounts through the year 2005.

3

pursuant to the terms of their contractual agreement. Soon after the Arbitration commenced, the arbitrator added Bilberry Golf as a party respondent pursuant to Plaintiff's request. Plaintiff disputes the validity of Bilberry Golf's debt claim, contending that the debt did not appear in any records of the Foxchase Partnership until after Plaintiff filed the present action. Since it was not a party to either of the partnership agreements and had not signed any arbitration agreement with either of the Partners, Bilberry Golf objects to being forced to defend the validity of its claim in the context of the Arbitration.

Bilberry Golf moved to intervene in this action and seeks the following relief: (1) a permanent stay of the Arbitration as it relates to Bilberry Golf;[4] (2) a declaratory judgment establishing that Bilberry Golf may not be compelled to participate in the Arbitration; and (3) a temporary restraining order and preliminary injunctive relief to stop a final hearing in the Arbitration until

---

[4] The Court interprets Bilberry Golf's motion for a "stay" to be a request for an injunction permanently enjoining the arbitrator from exercising jurisdiction over Bilberry Golf in the pending Arbitration. The parties had a full opportunity to present evidence at the previous hearing for the Court to consider in deciding Bilberry Golf's request for permanent declaratory and injunctive relief. The Court treats that hearing as a consolidated hearing on the merits. *See* Fed. R. Civ. P. 65(a)(2). Today's ruling therefore ends the controversy for which Bilberry Golf was permitted to intervene.

4

the Court rules on the presently pending motions.[5] (*See* Mot. to Stay Arb., Decl. Relief, TRO & Interloc. Inj., Doc. 52-2 at 5-7.)

DISCUSSION

Preliminarily, the Court observes that it previously stayed this action pending arbitration of the dispute between the parties to this lawsuit. That stay has been lifted temporarily to allow the Court to address the motions filed by Bilberry Golf.

## I. Motion to Intervene

Although the Court orally granted Bilberry Golf's Motion to Intervene at the previous hearing, the Court finds it appropriate to reduce that oral ruling to writing and further explain the rationale for the ruling. Bilberry Golf sought to intervene in this action for the purpose of (1) seeking a declaratory judgment that the arbitrator has no authority to compel it to arbitrate a dispute that Bilberry Golf did not agree to arbitrate; and (2) seeking injunctive relief enjoining the arbitrator from exercising jurisdiction over it in the pending Arbitration. Specifically, Bilberry Golf contends that it cannot be compelled to participate in the Arbitration because it neither agreed to participate nor contractually waived its right to have its disputes with the Partners presented in a judicial forum. The Federal Rules of Civil Procedure permit intervention "[u]pon

---

[5] At the evidentiary hearing, the Court indicated that the parties should not proceed with the Arbitration until the Court issued its final ruling in this matter. In light of today's ruling, Bilberry Golf's request for temporary and preliminary relief is moot.

5

timely application . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). Under the circumstances of this case, the Court finds that permissive intervention is appropriate.

The subject of this action is the same partnership dispute which is currently pending in arbitration. Plaintiff accuses Defendant of breaching both his contractual and fiduciary duties, in part because of his connection to and dealings with Bilberry Golf. These "dealings" include the events leading up to Bilberry Golf's debt claim against Foxchase Partnership, which is the same claim upon which Bilberry Golf was added to the Arbitration. Bilberry Golf now claims that, because it did not agree to submit to arbitration any disputes with either Plaintiff or Defendant, compelling it to participate in the Arbitration to protect its debt interest was improper. Thus, Bilberry Golf's claim has questions of law and fact in common with the above captioned action. Furthermore, granting Bilberry Golf's request to intervene will have no effect on the Court's ability to adjudicate the rights of the original parties, thus eliminating any concern regarding undue prejudice or delay. Therefore, Bilberry Golf's Motion to Intervene should be granted. *See* Fed. R. Civ. P. 24(b).

## II. Motions for Declaratory and Injunctive Relief

Bilberry Golf seeks declaratory and injunctive relief based upon its contention that it should not be subject to the pending

Arbitration since it never agreed to arbitrate any dispute with the parties to that Arbitration. The Declaratory Judgment Act permits a federal court to grant declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. A justiciable controversy exists where the controversy is "'definite and concrete, touching the legal relations of the parties having adverse legal interests.'" *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.,* 931 F.2d 744, 747 (11th Cir. 1991) (internal citations omitted). Thus, for this Court to be able to consider the claim for declaratory relief, Bilberry Golf must show: (1) an actual or threatened injury; (2) that this injury is traceable to the challenged action; and (3) a likelihood that a favorable decision will redress the injury. *Id.* (*citing Valley Forge Coll. v. Ams. United*, 454 U.S. 464, 472 (1982)).

Bilberry Golf contends that it has been made a party to a binding arbitration without its consent. Without some relief from this Court, Bilberry Golf can either submit to arbitration, in the absence of having agreed to do so, thereby waiving its right to have its interests protected in a judicial forum, or it can refuse to participate in the Arbitration and risk a later determination that it was required to participate because its addition to the Arbitration was proper. The Court finds that, under these circumstances, Bilberry Golf faces a threatened injury that is traceable to the challenged action and that a favorable decision by this Court would

7

redress the injury. Accordingly, declaratory relief is an appropriate remedy in this case.

It is also clear that injunctive relief is an available remedy to protect someone from being subjected to an arbitration proceeding without his consent. The Federal Arbitration Act expressly provides that a federal court may order parties to submit to arbitration any issues "referable to arbitration" that arise under a contract containing an arbitration agreement. 9 U.S.C. § 3. This provision has been interpreted to authorize the courts to enjoin an arbitration to prevent the exercise of arbitration jurisdiction over someone who never agreed to arbitrate the dispute in question. As explained by the Eleventh Circuit, "'[t]o allow a federal court to enjoin an arbitration proceeding which is *not* called for by the contract interferes with neither the letter nor the spirit of this law. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.'" *Indus. Risk Insurers v. M.A.N. Gutchoffenhgshutte GmbH,* 141 F.3d 1434, 1449 n.23 (11th Cir. 1998) (internal citation omitted) (emphasis added). Thus, it is clear that if the Court finds that Bilberry Golf cannot be compelled to participate in the pending Arbitration, then the Court has the authority to enjoin that Arbitration as to Bilberry Golf.

A.  *Agreement to Arbitrate*

Any analysis of a party's rights and duties regarding arbitration must begin with a determination of whether the party agreed to arbitrate the dispute in question. Arbitration is a matter of contract" in which "the parties' intentions control." *M.S. Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal citations omitted). Though courts must accommodate the "liberal federal policy favoring arbitration agreements" and construe "the parties' intentions . . . generously [] as to issues of arbitrability," it is axiomatic that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.; see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

In this case, it is undisputed that Bilberry Golf is not a signatory to the arbitration agreement that authorized the pending Arbitration. Therefore, Bilberry Golf argues that it cannot be compelled to participate in that Arbitration. Plaintiff acknowledges that Bilberry Golf is not a party to the arbitration agreement. Nevertheless, he contends that Bilberry Golf should be compelled to participate in the arbitration based upon the principles of equitable estoppel and agency. *See M.S. Dealer,* 177 F.3d at 947 (listing three exceptions to the "signatory requirement": (1) equitable estoppel;

(2) agency; and (3) third party beneficiary.)[6]  While equitable estoppel and agency principles can apply in certain circumstances to authorize arbitration of a dispute involving a nonsignatory to an arbitration agreement, those circumstances do not exist here.

    B.    *The Equitable Estoppel Exception to the Signatory Requirement*

The principle of equitable estoppel permits a *nonsignatory* to compel a *signatory* to arbitrate "when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory[,]" or "'when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories . . . .'" *Id.* (internal citations omitted) (all alterations and omissions in original).  Plaintiff argues that equitable estoppel should be applied here to require Bilberry Golf, a *nonsignatory,* to submit to an Arbitration because Defendant "improperly [gave] secured creditor status to Bilberry Golf based on a disputed debt . . . that did not appear on the books and records of Foxchase until after Plaintiff filed suit," and that this amounts to "'substantially interdependent and concerted misconduct' by Mr. [Leonard] Bilberry and the non-signatory, Bilberry Golf." (Pl.'s Br. Opp. Mot. to Intervene 16, 17.)

---

[6]Neither of the parties contend that the third exception, for third party beneficiaries, applies to the facts of this case.

10

In each of the cases cited by Plaintiff in support of his equitable estoppel argument, a *nonsignatory* sought to estop a *signatory* from avoiding an agreement to arbitrate where the dispute between the two derived from the contract containing the arbitration clause.[7] Here, Plaintiff, the *signatory* to the arbitration agreement, seeks to compel Bilberry Golf, a *nonsignatory* to that agreement, to arbitrate a dispute that Bilberry Golf never agreed to arbitrate. The equitable estoppel exception simply does not apply in this context, and cannot be used to require a nonsignatory to arbitrate a dispute where it never agreed to arbitrate anything.[8] *See United Steelworkers*, 363 U.S. at 582; *see also Thomson v. Am. Arbitration Assoc.*, 64 F.3d 773, 779 (2nd Cir. 1995).

C.   *The Agency Exception to the Signatory Requirement*

In support of his agency argument, Plaintiff maintains that the relationship between Bilberry Golf and the parties to the Arbitration is so close that Bilberry Golf should be required to participate in

---

[7]*See*, *e.g.*, *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342 (11th Cir. 1984); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993); *M.S. Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999); *St. Paul Fire & Marine Ins. Co. v. Barge*, 225 Ga. App. 392, 483 S.E.2d 883 (1997); *Autonation Fin. Servs. Corp. v. Arain*, 264 Ga. App. 755, 592 S.E.2d 96 (2003); *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 597 S.E.2d 470 (2004).

[8]It is one thing to *permit* a nonsignatory to an arbitration agreement to compel a signatory to an arbitration agreement to arbitrate when the nonsignatory's claims and/or defenses are inextricably intertwined with the arbitration agreement and/or the other parties to the agreement. It is quite different to *compel* a nonsignatory to arbitrate a dispute when he never agreed to arbitrate anything.

11

the Arbitration even though it is not a signatory to the agreement. It is correct that under certain circumstances an agency exception to the signatory requirement may apply where "'the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'" *M.S. Dealer,* 177 F.3d at 947. An examination of the relationship between the parties in this case reveals that the agency exception does not apply.

Bilberry Golf became actively involved with the Foxchase Partnership when Defendant Bilberry suffered a debilitating heart attack which rendered him unable to fulfill his duties as the general partner of Foxchase. At that time, Defendant entered into a contract with Bilberry Golf by which the latter agreed to manage the Foxchase Property. The contract guaranteed Bilberry Golf a ten percent commission from Foxchase's overhead and profit in exchange for Bilberry Golf's promise to "[d]esign[] and [b]uild[] a golf course, [d]evelop[] building lots, as well as, [m]anag[e] and [o]perat[e] a golf course/residential development." (Mot. to Intervene Ex. A of Ex. C, Aff. Lee Bilberry.) The contract did not contain an arbitration provision.

Bilberry Golf continued to manage the Property until Defendant's return around August of 2000. Despite Plaintiff's allegations to the contrary, Lee specifically testified that Bilberry Golf maintained

12

separate records and a separate bank account for the Property, which it used to deposit revenues and disburse payments on partnership debt. Although the Foxchase golf course opened for play around March of 1998, Lee maintains that it never became profitable and required Bilberry Golf to provide operating loans in excess of $2 million.

Plaintiff contends that the interconnectedness of Bilberry Golf and the Foxchase Partnership establishes an agency relationship which subjects Bilberry Golf to the arbitration clause in the Foxchase partnership agreement. The evidence is undisputed that Bilberry Golf was not a party to the Foxchase partnership agreement. It is also clear that at the time that the parties to that partnership agreement executed it, Bilberry Golf managed the partnership property pursuant to the terms of its contractual agreement with Foxchase. While this fact may demonstrate that Bilberry Golf was an agent of the Foxchase Partnership as it related to management of the golf course, it does not establish that either of the Partners was an authorized agent of Bilberry Golf who could bind Bilberry Golf contractually. Plaintiff does not contend that Bilberry Golf was ever a partner in the Foxchase enterprise, and Plaintiff has produced insufficient evidence that Bilberry Golf and the Foxchase Partnership were ever one and the same. All the evidence shows is that Bilberry Golf maintained a contractual relationship with Foxchase, and that this contractual relationship did not include an arbitration agreement. This evidence is insufficient to pierce either the "corporate veil" of Bilberry

Golf or the "partnership veil" of Foxchase. Based on the foregoing, the Court finds that the agency exception does not apply and may not be used to bind Bilberry Golf to an arbitration agreement to which it never agreed to be a party.

CONCLUSION

In sum, Bilberry Golf never agreed to arbitrate any dispute involving it and the parties to this litigation. Furthermore, no exceptions exist that would authorize this Court to require Bilberry Golf to submit to arbitration. Therefore, the Court finds that the arbitrator exceeded his authority in compelling Bilberry Golf to submit to the Arbitration.

Bilberry Golf's Motion to Intervene (Doc. 52-1) and its requests for declaratory relief and permanent injunctive relief (Doc. 52-2) are granted. Accordingly, Bilberry Golf shall not be compelled to participate in the Arbitration, *Leevers v. Bilberry*, Am. Arbitration Assoc., No. 30 180 Y 00349 06 (April 25, 2006) (Allgood, Arb.), and the arbitrator in that Arbitration is enjoined from exercising jurisdiction over Bilberry Golf in those proceedings.

IT IS SO ORDERED, this 31st day of January, 2007.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE